**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EILEEN M. PATRICK,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:08cv450 |
| | ) | Electronic Filing |
| **JOSEPH PATRICK, III,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

AND NOW, this 12th day of February, 2010, upon due consideration of [72] defendant's motion in limine "to allow evidence of what occurred at ISA not only before but after February 25, 2006," and the parties' submissions in conjunction therewith, IT IS ORDERED that the motion be, and the same hereby is, granted as follows: defendant may introduce as evidence of his state of mind in February 2006 (1) that Hatachi reduced its orders of chromium by forty percent on a date after February 25, 2006, and (2) defendant's testimony as to post-February 25, 2006, events in ISA's business in providing his explanation as to why his statements on or before February 25, 2006, are not inconsistent with the October 2006 National City Offering Memorandum.  The motion is denied in all other aspects addressed in this memorandum order.

Defendant filed a motion in limine seeking a ruling permitting the introduction of all post-February 25, 2006, evidence that he intends to introduce about the events which occurred in the chromium market or otherwise affected the operation of ISA's business after February 25, 2006,  through the date ISA was sold by defendant.  The court asked counsel in to chambers to make specific proffers and present argument on those specific proffers.  That resulted in three specific areas of evidence being identified: a substantial customer of ISA in fact reduced its orders by a predicted amount after defendant indicated the customer would do so; ISA experienced a decline in the profits it experienced in the chromium market even though its sales remained consistent or increased; and ISA had a judgment rendered against it in an arbitration

before a foreign tribunal.  Each of these events has a connection to a prediction, forecast or opinion offered by defendant in or prior to the February 25, 2006 email: one of ISA's best customers, Hatachi, would be reducing its orders in the chromium market by 40 percent; ISA needed to reserve some capital due to the pendency of a Russian arbitration proceeding; and ISA's future prospects in the chromium market looked negative at best and very ugly at worst.

Plaintiff challenges defendant's use of post-statement "event" evidence on the grounds of relevance, contending that each future event, in itself, has no probative value as to the material issues in the case.  Specifically, plaintiff contends that evidence of subsequent events cannot be introduced to show that a prior statement, prediction  or opinion by defendant was true when made.  Assertedly,  the evidence sought to be advanced by defendant will improperly suggest to the jury that because a post-statement event shows that a certain prediction or forecast turned out to be true, defendant must have believed he was making a true statement when the prediction, opinion or forecast was made or he must have had a basis for making the prediction, opinion or forecast.  And such evidence purportedly cannot be competent proof of the defendant's sincerity of belief in the statements when made.

Defendant initially maintained that evidence that a prediction, opinion or forecast turned out to be true vitiates any basis for finding the statements made to be false and thus eliminates any basis for a securities fraud claim. See e.g. In re Healthcare Compare Corp. Securities Litigation, 1993 WL 616683 (N.D. Ill. Nov. 19, 1993)  (Failure to allege inaccuracy of analysts' predictions of the defendant's earnings rendered 10(b)(5) claim subject to dismissal – "As we interpret the law, the inaccuracy of the prediction is insufficient to give rise to a cause of action; it is, however, necessary to the cause of action.") (citing Eisenberg v. Gagnon, 766 F.2d 770, 776 (3rd Cir.1985) (inaccuracy of forecast insufficient to give rise to cause of action; forecast must also have been recklessly made)); In re Syntex Corp. Securities Litigation, 855 F. Supp. 1086, 1096 (N.D. Cal. 1994) ("Although Plaintiffs support their allegations by citing specific facts Defendants had in their possession when Syntex issued its statements . . . , the predictions were

2

not sufficiently inaccurate to be actionable. A forecast that is reckless when made does not give rise to liability if it ultimately proves to be accurate. After all, securities laws are designed to prevent the market from being misled.") (citation to <u>In re Healthcare Compare</u> omitted)).   In his revised position submitted in the brief accompanying the motion, defendant argues that defendant's predictions, opinions and forecasts about what was happening with ISA's chromium business in or around and after February 25, 2006, must be viewed on a continuum, and the jury needs to understand the subsequent events that happened at ISA in order to evaluate properly whether defendant's statements were accurate, false or misleading when made.

Each party seeks a broad-brush ruling that will permit or eliminate all post-statement event evidence.  Each cite cases that essentially are fungible for the proposition that a fraud-on-the-market claim cannot be sustained based on predictions or forecasts that prove to be true and/or cannot be viewed as having produced an injury in the market.  The cases advanced typically hold or observe that when the only allegation advanced to support a claim of securities fraud based on a forward-looking projection of a company's success or prospects in the market is that the prediction turned out to be false, then the complaint has failed to state a claim for relief. In general, these authorities do not address the admissibility of post-statement event evidence where the claim is that fraud in the form of predictions, forecasts and opinions was used to gain control over the seller's stock for the purpose of future gain.  Thus, the blanket approach advanced by each party must be rejected as unsupported and non-persuasive.

After considering the proffers and arguments, it is clear that each area of evidence must be considered separately.  The proposition that a subsequent event can never be probative of an individual's state of mind when a prior projection, forecast or opinion about future events was made is an axiom without foundation.  Instead, each piece of evidence must be analyzed for probative value and any such value must then be weighed against any potential prejudice that is inherent in the use of such evidence or other grounds for exclusion under Federal Rule of Evidence 403.

The post-statement event of Hatachi reducing its orders with ISA demonstrates the appropriateness of such an approach.  Defendant is alleged to have made a misleading statement when he predicted in February 2006 that Hatachi would be cancelling forty percent of its orders in the chromium market.  Plaintiff maintains that the statement was misleading because it suggested ISA was going to experience a decline in chromium sales while defendant was aware of facts that indicated Hatachi would actually be tripling its orders with ISA.  Defendant seeks to introduce evidence that Hatachi subsequently did in fact reduce its total purchase of chromium by 40 percent. Plaintiff maintains that such evidence has no probative value as to defendant's sincerity in the accuracy of the statement when made.

While the classic case of securities fraud often involves a misrepresentation of historical fact, projections, forecasts and opinions can give rise to a securities law violation were they are made with the requisite mental state.  See e.g.  In re Apple Computer Securities Litigation, 886 F.2d 1109, 1113 (9th Cir. 1989) ("projections and general expressions of optimism may be actionable under the federal securities laws.") (citing Marx v. Computer Sciences Corp., 507 F.2d 485, 489-92 (9th Cir.1974); and G & M Inc. v. Newbern, 488 F.2d 742, 745-46 (9th Cir.1973)); accord Eisenberg v. Gagnon, 766 F.2d 770, 776 (3d Cir. 1985) ("Since the district court's error in failing to instruct the jurors that projections and opinions come within the ambit of actionable misrepresentations may have affected the jurors' verdict as to all of the defendants, we must overturn the jury verdict in favor of defendants on the securities claim.") (citing with approval Marx, 507 F.2d at 490)).  Any such projection or forward-looking statement of belief "contains at least three implicit factual assertions: (1) that the statement is genuinely believed, (2) that there is a reasonable basis for that belief, and (3) that the speaker is not aware of any undisclosed facts tending to seriously undermine the accuracy of the statement."  In re Apple Computer, 886 F.2d at 1113 (citing Marx, 507 F.2d at 490).  Such a statement "may be actionable to the extent that one of these implied factual assertions is inaccurate." Id.; accord Eisenberg, 766 F.2d at 776 ("In establishing scienter with respect to projections and opinions, it

is insufficient to show mere negligent conduct . . . or that a forecast turned out to be inaccurate.

However, as this court has previously stated, an opinion must not be made "with reckless

disregard for its truth or falsity," or with a lack of a "genuine belief that the information disclosed

was accurate and complete in all material respects." McLean v. Alexander, 599 F.2d 1190, 1198

(3d Cir.1979) (quoting Ultramares v. Touche, 255 N.Y. 170, 174 N.E. 441 (1931) (Cardozo, J.)).

Therefore, an opinion that has been issued without a genuine belief or reasonable basis is an

"untrue" statement which, if made knowingly or recklessly, is culpable conduct actionable under

§ 10(b) and Rule 10b-5.") (collecting additional authority in support)). Thus, to have any

probative value, a subsequent event must have some tendency to prove or disprove one or more

of these three underlying factual premises that needed to exist at the time the prediction, forecast

or opinion about future events was rendered.

       The event of Hatachi's post-statement reduction of its total orders of chromium meets this

requirement.  The event itself creates an inference that defendant's prediction that Hatachi would

do so in the future was based on specific information he had gained in managing ISA's ongoing

business with Hatachi.  The inference that his prediction was based on concrete and specific

information gained from personal dealings with Hatachi personnel provides probative evidence

to support a finding that defendant genuinely believed the statement and had a reasonable basis

for that belief.

       This probative value is not substantially outweighed by any potential prejudice from the

admission of evidence confirming the event.  Plaintiff does not contend that the statement was

false when made.  Instead, she seeks to establish that defendant was aware of other non-disclosed

facts that indicated the reduction actually would result in an increase in ISA's sales of chromium

to Hatachi and the prediction of a future reduction was done to mislead about its likely effect on

ISA's chromium business.  The introduction of the event evidence does not create any undue

prejudice in plaintiff's ability to submit evidence and prove that such was the case.  The links

between the event evidence and the underlying factors to be assessed at the time defendant made

the prediction does not invite the jury to make an unsupported or speculative inference about whether defendant genuinely believed the statement and had a reasonable basis for that belief. There is little room for the conclusion that forces outside defendant's ken at the time produced the subsequent event by happenstance.   It also has little potential to bolster the credibility of defendant based on a speculative connection between the events and the previous prediction, opinion or forecast.  Accordingly, any prejudicial effect of the event evidence in this areas is minimal and goes to weight of the evidence.  It will be admitted.

Defendant's proffer of the judgment being rendered against ISA in the Russian tribunal provides a clear example of a subsequent event whose probative value is substantially outweighed when analyzed pursuant to the applicable framework.  Defendant made statements to the effect that it was essential to the financial prospects of ISA to reserve an adequate amount of capital to deal with the ultimate potential of being hit by a large judgment from the arbitration. Plaintiff has evidence indicating that defendant never set a reserve in contravention to his stated need to do so, and statements suggesting that defendant genuinely believed that the Russian proceeding was based on or constituted a meritless claim, both of which plaintiff claims demonstrate that defendant did not have a sincere belief in his statements about (1) the stated potential for liability and (2) the likelihood that any potential liability would have an effect on ISA's future financial prospects.

Defendant seeks to introduce the event of the Russian tribunal rendering a substantial judgment against ISA in order to prove that his belief was both real and well-founded.  But the rendering of the judgment adds nothing to the assessment of the degree of risk posed by the pending arbitration when the statements where made.  Nor does it provide well-linked inferences to particular bases of information that would have informed defendant's belief in the degree of risk he conveyed to plaintiff. Conversely, the event of the rendering of a substantial judgment from an arbitration in a Russian tribunal invites the jury to speculate that the risk was indeed great without a foundational basis for doing so.  It also invites the jury to ascribe enhanced

6

credibility to defendant's statements to plaintiff merely because for any one of what could be countless reasons a substantial award was rendered in that foreign tribunal against ISA. The clear potential for the jury being swayed by such post-hoc justification and boot-strapping of defendant's credibility provides a basis for undue prejudice which substantially outweighs the probative value of this post-statement evidence.

Finally, defendant has identified an independent basis for the admission of post-statement evidence bearing on ISA's profitability in the chromium market between February of 2006 and the issuance of the National City Offering Memorandum in October of 2006. Plaintiff contends that the defendant made misleading statements about the prospects of ISA in the chromium market in the communications to her prior to the execution of the Stock Asset Purchase Agreement. These statements were assertedly calculated to mislead and one need only look to the memorandums and communications with National City and Blue Point during this period of time to see a telling inconsistency in defendant's belief about ISA's position in the chromium market. In each of these communications defendant did not allot for or represented that there was or would be a reduction in ISA's chromium business.

Defendant intends to testify about why his statements to plaintiff to the effect that ISA's future "prospects in the chromium market were negative at best and very ugly at worst" and the representations he authorized in conjunction with the October 2006 National City Offering Memorandum were not inconsistent. His explanation in essence will be that shifts occurred in the type of chromium being consumed in the market and while volume and amount remained the same or even increased, ISA's profits declined due to margin of profit it earned between the two grades of chromium primarily being sold before and after his statements to plaintiff.

Of course, defendant properly can provide testimony about why he made the statements to plaintiff in February, the bases for those statements, why he sincerely believed in those statements and so forth. He also properly can provide testimony about why he made the statements in the National City Offering Memorandum and other communications placed in

evidence by plaintiff,  the bases for those statements, why he sincerely believed in those statements and so forth.  He seeks to refer to events in the market that informed his post-event statements in the National City Offering Memorandum.  And there is nothing improper in the use of such event evidence to explain why a subsequent statement was made. Such event evidence will be admitted for this purpose.

Plaintiff's challenge is to the use of such post-statement events to prove defendant's state of mind when he made the pre-event statements to plaintiff.  Defendant seeks to justify the use of subsequent event evidence in the chromium market as substantive evidence of his prior state of mind under the notion that he made assessments about market conditions on a continuum, even though he did not state or allude to them when he communicated with and conveyed his assessments about ISA to plaintiff, and the only way for the jury to understand what he confronted at any given time is for them to see and understand the whole picture.  In other words, if he testifies that in February of 2006 he was taking into account various factors that potentially could impact ISA's business in the market when he made the representations to plaintiff, then it is appropriate for the jury to consider the post-statement events that occurred in ISA's business from that point to October of 2006 and beyond as proof that those facts were ones of significant concern to defendant when he made the statements and their potential impact was in fact realized.

While the "whole picture" rationalization for the admission of evidence is by no means new, it is not an approach sanctioned in the Federal Rules of Evidence.  Its  guideposts appear to be that the evidence have some connection to the historical events underlying the litigation and the use of the evidence for the stated purpose pass muster with the trial court's discretion.  Such amorphous criteria would permit the admission of evidence in almost a virtually unbounded and ad-hoc manner.  We think the comprehensive and orderly approach to the admission of evidence perfected by the Federal Rules of Evidence is sufficient and we decline defendant's invitation to employ such additional criteria. See United States v. Hall, 653 F.2d 1002, (5th Cir. 1981)

8

(Implicit in definition of relevant evidence are requirements that evidence be probative of proposition that it is offered to prove and that proposition to be proved be one that is of consequence to determination of the action.); <u>Murray v. United States</u>, 351 F.2d 330, <u>cert. denied</u>, 383 U.S. 949 (1965) (All facts having rational probative value to issues in case are admissible unless some specific rule forbids their use.).

Moreover, defendant has not identified in any way how the post-statement market and business events have a sound nexus or inferential link to those bases implicitly or explicitly identified in the February 2006 communications.  Such a nexus is necessary to make the post-statement events probative of at least one of the three factual state-of-mind criteria place at issue by each of  his challenged assertions.  <u>See</u> <u>Tompkin v. Phillip Morris USA, Inc.</u>, 362 F.3d 882, (6th Cir. 2004) (proponent of evidence must demonstrate the relevance of each proffer under Rule 401 and the failure to do so warrants exclusion).  Merely arguing that a basis for admission is established because there were unexpressed market forces that he had in mind when he made the communications and those forces then turned out to be true is tantamount to saying: well, I was thinking of them back then, and look, the event happened, so that's proof of my thoughts back then and that the predictions turned out to be true.  Such a "Carnac the Magnificent" approach creates undue prejudice by inviting the jury to draw an inverse and unfounded inference of cause and effect based on nothing more than speculation.  There is no way to verify or even infer what unidentified market forces defendant assertedly had in mind when he made the statements and then draw a sufficient causal link between the occurrence of those forces and events and defendant's prior statements except by defendant's after-the-event account of what market conditions or forces he was thinking about prior to the event.  While defendant can testify to such matters at his own peril, to use the event in itself as proof of the prior unspoken thought constitutes at least two fallacies of logic:  "petitio principii" or begging the question and "ignoratio elenchi" or reaching an illogical conclusion.  Such logic and resulting proof can hardly be said to be relevant to the three state-of-mind criteria at issue and thus the approach fails the

initial hurdle of Rule 401.  Compare Gulbranson v. Duluth, Missabe and Iron Range Ry. Co., 921

F.2d 139, 142 (8th Cir. 1990) (In FELA action, minutes from safety committee meeting held 9

months after the accident giving rise to the plaintiff's injury were irrelevant under Rule 401:

"The accident occurred on July 20, 1984, while the minutes recorded a meeting held on April 10,

1985, some eight to nine months later.  The fact that the Railway may have been aware of a

continuing problem in April of 1985, is not probative of its knowledge in July of 1984.

Moreover, Gulbranson offered no evidence to establish that the reference to a continuing

problem related back to the date of the accident.") (footnote omitted)).  Furthermore, proceeding

in such a manner has the potential to bolster defendant's credibility without an adequate

evidentiary basis for doing so.

Accordingly, any post-statement event evidence verifying actual conditions in the

chromium market and ISA's business will be admitted for the limited purpose of explaining the

bases for defendant's statements made after the event in question, such as those statements made

in National City Offering Memorandum released in October of 2006, and the jury will be

instructed as follows:

Members of the jury, evidence has been admitted that several events occurred in

the chromium market and ISA's business after defendant made a number of the

challenged communications with plaintiff in February of 2006.  The evidence

verifying that these events actually occurred was admitted for the limited purpose

of considering those events and occurrences that defendant could have been aware

of and had the ability to take into account when he made any statements after the

event in question.  For example, defendant may have been aware of any events

that actually occurred in the chromium market between February of 2006 and

September of 2006 when he made the statements incorporated into the National

City Offering Memorandum in October of 2006.  And you may consider any and

all such events that you find actually occurred in determining how defendant's

October of 2006 statements should be understood and evaluated by you in rendering you verdict.

Defendant has also testified that he was anticipating or took into account the potential that certain events would occur in the market and ISA's business when he made the communications to plaintiff in or prior to February of 2006, and after you have received the court's final instruction, which will include a number of criteria to take into account in evaluating evidence and the testimony of the witnesses in this case, you may give his testimony on these matters such weight as you think it deserves.  But I must caution you that with one exception, the evidence verifying that certain events actually occurred in the chromium market and ISA's business after February of 2006 was not admitted for the purpose of proving defendant's state of mind when he made the statements in February of 2006.  It would be improper to conclude from the occurrence of the event itself that the person making a pre-occurrence statement that did not identify or allude to the event either knew or must have anticipated that the event would occur.  The Federal Rules of Evidence do not permit the use of after-event evidence to prove a speaker's state of mind prior to the event unless certain additional criteria are present which make the event admissible evidence that may be used for that purpose.  Therefore, with one exception, the evidence that a number of events actually occurred in the chromium market and ISA's business after the communications were made to plaintiff in February of 2006 cannot be considered by you in your evaluation of and determinations regarding defendant's state of mind when he made the communications to plaintiff in or before February of 2006.

Now I mentioned that there was one exception.  That is the evidence that Hatachi actually reduced its total orders of chromium by forty percent after

11

defendant indicated in February of 2006 that it would be doing so.  The evidence

verifying that this event actually occurred was admitted both for the purpose of

proving defendant's state of mind when he made the prediction in February of

2006 that that would occur and for the purpose of proving defendant's state of

mind as to any statements he made after the actual event occurred, such as when

he made the statements in the National City Offering Memorandum in October of

2006.

Plaintiff's counsel's contention that they will be deprived of effective  cross-examination
if defendant is permitted to testify that he took into account the potential that certain events might
occur in the chromium market and ISA's business but did not incorporate or allude to such
matters when he made the communications to plaintiff in February of 2006 rings hollow.
Defendant may be impeached by the every fact that he failed to mention such factors when he
identified the numerous others that he wanted plaintiff to know were being taken into account.  It
can also be highlighted that such factors were only identified after the veracity of his
communications were challenged and he gained a motive to identify and rely on the additional
factors.  Similarly, defendant's failure to identify any such factors pursuant to on-point questions
in prior deposition testimony or discovery requests may well give rise to other powerful forms of
ammunition to be used in cross examination or otherwise defending against such testimony.  In
short, we see no valid basis to preclude such testimony on this ground.

Counsel shall frame all future objections and arguments concerning the admission and
use of actual event evidence to prove prior-event state of mind in accordance with the approach
outlined in this memorandum order.  The proponent of any such evidence shall identify all
purposes for which admission is sought and the nexus or links which make such evidence
probative to one or more of the three state-of-mind factors placed at issue by defendant's
communications forming the bases for this lawsuit.  The objecting party shall identify all
potential grounds for prejudice created by the use of post-statement event evidence to prove

defendant's prior-event state of mind.   The court will conduct the proper weighing of such

evidence pursuant to Rule 403.


                                        s/ David Stewart Cercone
                                        David Stewart Cercone
                                        United States District Judge


cc:     Richard M. Asche, Esquire
        Russell M. Gioiella, Esquire
        Litman, Asche & Gioiella, LLP
        350 Broadway
        New York, NY 10006

        Melissa J. Tea, Esquire
        K&L Gates LLP
        Henry W. Oliver Building
        535 Smithfield Street
        Pittsburgh, PA 15222

        Joseph F. McDonough, Esquire
        Manion McDonough & Lucas PC
        Suite 1414, U.S. Steel Tower
        600 Grant Street
        Pittsburgh, PA 15219

13